The relief described hereinbelow is SO ORDERED.

SIGNED this 16th day of May, 2018.



Robert D. Berger
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

**SHELDON A. GRAY and
KARLA LATONYA HOUSTON-GRAY**,

          Debtors.

Case No. 12-22251
Chapter 7

**SHELDON A. GRAY**,

          Plaintiff,

          v.

**RONALD NUSSBECK, et al.**,

          Defendants.

Adv. No. 15-6005

**SUMMARY JUDGMENT ORDER**

This matter comes before the Court on its own motion. Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 56(f) permit a court, after giving notice and a reasonable time to respond, to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." On April 10, 2018, this Court issued an order to show cause why a summary judgment order substantially identical to this one should not be entered.[1] Defendants Ronald Nussbeck and Kevin Odrowski did not respond to the order to show cause and subsequently consented to entry of the Court's proposed order.[2] Plaintiff Sheldon Gray filed a "Motion Order to Show Case [sic]"[3] on May 1, 2018. Because the following material facts are not in dispute, the Court is now prepared to rule. As to defendant Nussbeck, judgment will be entered in favor of Gray, but no damages will be awarded. As to defendants Odrowski and Kevin J. Odrowski Law Firm[4] (together, the "Odrowski Defendants"), judgment will be entered in favor of the Odrowski Defendants. The Court will enter a separate judgment pursuant to Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 58(a).

I. **UNDISPUTED FACTS**

Defendant Ronald Nussbeck made a personal loan to plaintiff Sheldon Gray in 2010. Gray partially repaid the loan before he filed a Chapter 7 bankruptcy petition on August 17, 2012. The balance on the loan was discharged in the bankruptcy. Nussbeck was served with

---

[1] ECF 94.

[2] *See* ECF 97 at 1; ECF 98 at 1.

[3] ECF 96 (errors in original). Gray's "motion" is essentially an unsworn affidavit, which cannot be used to defeat a motion for summary judgment. *See Hayes v. Marriott*, 70 F.3d 1144, 1148 (10th Cir. 1995); *see also* Fed. R. Civ. P. 56(e).

[4] The Court notes that "Kevin J. Odrowski Law Firm" is a nonexistent entity. *See* ECF 81 ¶ 2 ("Kevin J. Odrowski is a sole proprietor engaged in the practice of law. There is no 'Law Offices of Kevin J. Odrowski.'").

notice of Gray's bankruptcy on December 3, 2012,[5] and with notice of Gray's discharge on January 19, 2013.[6] The notice of Gray's discharge contained the following warning:[7]

**Collection of Discharged Debts Prohibited**

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor.

. . .

**Debts that are Discharged**

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed.

Following the discharge, however, Gray and Nussbeck entered into a "Settlement of Debt" agreement (the "Agreement")[8] under which Gray agreed to repay $50,980.76 to Nussbeck, consisting of (1) the discharged 2010 loan balance as well as (2) mortgage payments, property improvement costs, and real estate taxes paid by Nussbeck in 2013 for a commercial building at 6430 Troost.[9] The Agreement, dated May 14, 2013, was not filed with this Court and did not comply with the reaffirmation-of-debt requirements of 11 U.S.C. § 524(c). Nussbeck intended the Agreement to include the discharged personal loan.[10]

---

[5] Case No. 12-22251, ECF 38 at 2.

[6] Case No. 12-22251, ECF 49 at 3.

[7] Case No. 12-22251, ECF 49 at 2.

[8] Attorney Richard Wallace, who represented Gray in the bankruptcy case, drafted the Agreement.

[9] ECF 36-1 at 20-21. An LLC owned the 6430 Troost property; Nussbeck and Gray co-owned the LLC.

[10] *See* ECF 83-2 at 63 ("The contract should be filed in Kansas and Missouri, Tony borrowed money for his home down payment and Tony has me paying for his use of the Building in

3

Following Gray's breach of the Agreement, defendant Kevin Odrowski, an attorney representing Nussbeck, sent Gray a collection letter.[11] On November 1, 2013, Odrowski (again representing Nussbeck) filed a four-count complaint, *Nussbeck v. Gray*, in the Circuit Court of Jackson County, Missouri.[12] Count I of Nussbeck's complaint requested damages (consisting of the balance due under the Agreement, along with interest, attorneys' fees, and costs) for Gray's alleged breach of the Agreement. Count III of Nussbeck's complaint requested damages of "at least $25,000," in addition to punitive damages and a lien on the 6430 Troost property, alleging that Gray's fraudulent misrepresentations had induced Nussbeck to expend over $33,000 in mortgage payments and real estate taxes, that Gray had never intended to repay (and had not repaid) Nussbeck for these expenditures, and that Gray had been unjustly enriched thereby.

Five days after filing the Missouri complaint, Nussbeck applied a $33,500 "credit" to the amount he claimed Gray owed him under the Agreement, including "$27,997.05 to principal, leaving a principal balance of $22,983.71."[13] Gray subsequently filed a motion for judgment on the pleadings, in which he argued that he was entitled to judgment in his favor because all of the debts alleged in Nussbeck's complaint had been discharged in Gray's bankruptcy.[14] The Missouri court denied the motion.[15]

---

Missouri."); ECF 83-2 at 64 ("Tony agrees to repay $11,000 owed he borrowed for down payment on his house . . . .").

[11] ECF 36-1 at 22-23.

[12] ECF 36-1 at 1-13.

[13] ECF 83-3 at 1. This credit far exceeded the balance Gray owed on the discharged personal loan. However, because the records before this Court did not identify the specific components of the agreement to which the credit applied, the Court was initially unable to determine whether Nussbeck still sought to collect any portion of the discharged loan via the Agreement. At the Court's request, however, the Missouri court provided clarification. *See* page 8 *infra*.

[14] ECF 36-3.

[15] ECF 83-3 at 110.

4

On November 12, 2014, the Missouri court entered judgment in favor of Nussbeck on Counts I and III of his complaint.[16] As to Count I, the court awarded damages of "$22,983.71 (principal), $402.18 (accrued interest to November 12, 2014 at the per diem rate of $5.75), and reasonable attorneys' fees and expenses of $10,000, for a total Judgment on Count I of $33,385.89." As to Count III, the court awarded damages of "$11,262.54 (actual damages), and punitive damages in the sum of $20,000, for a total Judgment on Count III of $31,262.54." Gray subsequently filed a motion for new trial.[17] The motion cited 11 U.S.C. § 524(c) and argued (*inter alia*) that "[t]here was no severability clause included in the contract as to the [personal loan] discharged in the bankruptcy which rendered the contract void as the payment terms included the payment of the discharged debt. As such, the contract is void . . . ." The Missouri court denied the motion.[18]

Following the Missouri court's entry of judgment and denial of his motion for new trial,

---

[16] ECF 36-4.

[17] ECF 36-5.

[18] ECF 36-6. Because the Agreement was based in part on the discharged personal loan, and because the Agreement did not comply with the reaffirmation-of-debt requirements of § 524(c), the Agreement was unenforceable under the Bankruptcy Code. *See* 11 U.S.C. § 524(c) (providing that an agreement between a creditor and debtor, the consideration for which is based in part on a discharged debt, can be enforceable only if the agreement complies with the reaffirmation-of-debt requirements of that subsection). In holding that the Agreement was enforceable, the Missouri court erred. However, the rule of issue preclusion—and possibly the *Rooker-Feldman* doctrine as well—prevents this Court from revisiting or disturbing that decision. *See Restatement (Second) of Judgments* § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding that the *Rooker-Feldman* doctrine, under which a case is dismissed for lack of subject-matter jurisdiction, applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").

Gray filed the present adversary proceeding.[19] In his complaint, Gray alleges that Nussbeck "took me to Jackson County Court for debt include in the Bankruptcy of $10,000 personal loan, $14,187.52 BOK,[20] and $18,954.01 real estate taxes on 6430 troost ave, Kansas city mo 64131, and won a judgments December 2014."[21] Gray later amended his complaint "to add KEVIN J. ODROWSKI (KS#16260) and KEVIN J. ODROWSKI LAW FIRM. For actions which were taken in violation of injunction, and knowingly sought legal acts against plaintiff, which caused finical and stressful damages."[22] The Court understands these allegations to be claims that Nussbeck and Odrowski violated 11 U.S.C. § 524(a)(2), commonly referred to as the "discharge injunction."

## II. ANALYSIS

Summary judgment will be appropriate in this proceeding if there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. *See* Fed. R. Bankr. 7056; Fed. R. Civ. P. 56(a). "A fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d

---

[19] The Court notes that there is no private right of action for violation of the § 524 discharge injunction, *see, e.g.*, *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, (9th Cir. 2011), and that Gray technically should have brought this matter as a motion for contempt in his main bankruptcy case rather than as an adversary proceeding. However, "[t]o dismiss on procedural grounds alone [and require a debtor to refile as a contested matter] would be to elevate form over substance. . . . Such unnecessary 'hoop jumping' would merely serve to increase the costs of litigation, without providing any real benefit to either party." *In re Motichko*, 395 B.R. 25, 33 (Bankr. N.D. Ohio 2008) (allowing adversary proceeding that alleged violation of the discharge injunction to proceed as such). This Court will therefore consider the merits of Gray's complaint pursuant to its authority to impose sanctions for civil contempt under § 105. *See In re Paul*, 534 F.3d 1303, 1306 (10th Cir. 2008) ("Under 11 U.S.C. § 105(a), bankruptcy courts have the equitable power to enforce and remedy violations of substantive provisions of the Bankruptcy Code, including in particular the discharge injunction in § 524(a)(2).").

[20] Bank of Kansas, or "BOK," held the mortgage on the 6430 Troost property.

[21] ECF 1 (errors in original).

[22] ECF 54 (errors in original).

1226, 1231 (10th Cir. 2001). A dispute of material fact is "genuine" if the evidence is such that a reasonable factfinder could return a verdict for the party against whom summary judgment is sought. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).

### A. Scope of Discharged Debts

Section 301(b) of the Bankruptcy Code provides that "[t]he commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter." Because Gray commenced his voluntary Chapter 7 case when he filed his petition on August 17, 2012, the date of the order for relief was also August 17, 2012.

Section 727(b) provides, in relevant part and with emphasis added, that "[e]xcept as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts *that arose before the date of the order for relief* under this chapter . . . ." Therefore, Gray's discharge included debts that arose before August 17, 2012. It did not, however, include any debts that arose *after* August 17, 2012, as "[l]iabilities for post-petition conduct are not discharged." *In re Paul*, 534 F.3d 1303, 1306 and n.4 (10th Cir. 2008).[23] [24]

### B. The Missouri Judgment

Under 11 U.S.C. § 524(a)(1), a discharge in bankruptcy "voids any judgment obtained, to the extent that such judgment is a determination of the personal liability of the debtor" as to the discharged debt. Because Count I of Nussbeck's complaint alleged that Gray had breached the Agreement, one component of which was the discharged personal loan, the Missouri court's

---

[23] Gray, who amended his Schedule E/F on November 30, 2017, to include creditors to whom he incurred debts in 2017, appears unaware of this distinction. *See* Case No. 12-22251, ECF 94 at 1.

[24] More specifically, and as to the debts Gray incurred with respect to the 6430 Troost property, only those debts that arose *before* August 17, 2012, could have been discharged in Gray's bankruptcy.

7

Case 15-06005    Doc# 101    Filed 05/16/18    Page 7 of 12

judgment against Gray on Count I would be void to the extent that it is a determination of Gray's liability on the discharged personal loan.[25]  However, because of the "credit" Nussbeck applied to the amount owed by Gray under the Agreement, the extent (if any) to which the Missouri court's judgment on Count I included Gray's liability on the discharged personal loan was initially unclear to this Court.

Accordingly, on February 21, 2018, the Court entered the following order:[26]

> 28 U.S.C. § 1334(c)(1) allows this Court to abstain from deciding an issue "in the interest of comity with State courts or respect for State law."  This matter having come before the Court on its own motion, the Court holds that abstention under section 1334(c)(1) is appropriate here.  The extent (if any) to which the Missouri court's judgment on Count I includes Gray's liability on his discharged personal loan shall be decided by the Missouri court.  The parties shall return to the Circuit Court of Jackson County that originally entered judgment in *Nussbeck v. Gray*, Case No. 1316-CV27930, for a final judgment on that issue.

Gray filed that order with the Missouri court, which provided the requested clarification by its own order on March 28, 2018:  "This Court specifically finds that no portion of the judgment entered herein included any liability for any debt which had been discharged in Defendant Gray's bankruptcy."[27]  Thus, no portion of the Missouri court's judgment on Count I determined Gray's liability as to the discharged personal loan.  Two conclusions follow.  First, § 524(a)(1) does not operate to void any portion of the Missouri judgment.  Second, Nussbeck and Odrowski's pursuit of that judgment, following application of the $33,500 credit, involved only non-discharged debts and therefore could not have violated the § 524(a)(2) discharge injunction

---

[25] Count III of Nussbeck's complaint, which sought damages arising out of purely post-petition expenditures made by him at Gray's behest, does not implicate § 524(a)(2).

[26] ECF 92.

[27] *Nussbeck v. Gray*, No. 1316-CV27930 (Cir. Ct. Jackson Cty, Mo., Mar. 28, 2018).

(which by its terms applies only to discharged debts).

The Court now turns to whether either of the defendants violated the discharge injunction prior to application of the $33,500 credit. As many courts (including this one) have observed, the purpose of § 524 is to afford a debtor a "fresh start." Section 524(a)(2) operates as "an equitable remedy precluding the creditor, on pain of contempt, from taking *any* actions to enforce the discharged debt." *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1200 (9th Cir. 2008), *aff'd*, 559 U.S. 260 (2010). That said, "[t]he discharge prohibits prepetition creditors only from collecting their prepetition debts. It is not a lifelong shield against other acts—including assertions of claims, and litigation—by those same creditors." *Paul*, 534 F.3d at 1308 (quoting *In re Schlichtmann*, 375 B.R. 41, 97 (Bankr. D. Mass. 2007)).

    C.    **The "Settlement of Debt" Agreement**

A party seeking contempt sanctions for violation of the discharge injunction has the burden of proving, by clear and convincing evidence, that the defendant (1) knew the discharge injunction was applicable and (2) intended the actions that violated the injunction.[28] *See In re ZiLOG, Inc.*, 450 F.3d 996, 1007 (9th Cir. 2006) (approving two-part standard adopted by the Eleventh Circuit in *In re Bennett*, 298 F.3d 1059, 1069 (11th Cir. 2002)); *Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998) (stating that a plaintiff's burden of proof in a civil contempt proceeding is one of "clear and convincing evidence").

    1.    **Nussbeck**

Nussbeck was served with notice of Gray's discharge and the discharge injunction on

---

[28] Some bankruptcy courts within the Tenth Circuit have added a third element to this test: that the creditor "acts in a way that improperly coerces or harasses the debtor." *See, e.g.*, *In re Selby*, 481 B.R. 90, 99 (Bankr. E.D. Okla. 2012). However, the Tenth Circuit has only applied that element to creditor actions that are otherwise facially permissible under § 524. *See Paul*, 534 F.3d at 1308-10.

January 19, 2013.  Notwithstanding this notice, he negotiated and executed the Agreement, which he specifically intended to include Gray's discharged personal loan.  Then, when Gray breached the Agreement, Nussbeck sued him.  Although Nussbeck applied the $33,500 credit (which removed the discharged loan from the case) five days after filing suit, these undisputed facts demonstrate that Nussbeck (1) knew the discharge injunction was applicable and (2) specifically intended the actions (negotiating and executing the Agreement, then filing suit to enforce it) that violated the discharge injunction.  Nussbeck argues that "before entering into the agreement that became the subject of the lawsuit, Nussbeck sought assurances from [Gray's] counsel [i.e., Richard Wallace, the attorney who drafted the Agreement] that the agreement was not impacted or prohibited by [Gray's] bankruptcy."[29]  Although this argument does mitigate Nussbeck's actions, it does not alter the undisputed fact that Nussbeck violated the discharge injunction.  Under these facts, the Court holds that Nussbeck is liable for civil contempt under § 105 and thus may be subject to monetary sanctions.

Section 105 empowers bankruptcy courts to enter civil contempt orders, including an order for monetary sanctions against a creditor who violates the discharge injunction in § 524(a)(2).  *See Paul*, 534 F.3d at 1306; *In re Skinner*, 917 F.2d 444, 447-48 (10th Cir. 1990).  A contempt sanction is considered civil if it is remedial and for the benefit of the complainant. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994).  Here, because Gray incurred no additional expenses due to the inclusion of the discharged personal loan in the Agreement, and made no payments on the loan following discharge, the only damages Gray could have suffered as a result of Nussbeck's violation of the discharge injunction would have been emotional.

---

[29] ECF 64 ¶ 2.

The Tenth Circuit has not addressed the issue of whether § 105 authorizes damages for emotional distress caused by a violation of the discharge injunction. While a number of bankruptcy courts have held that § 105 does authorize such damages, those courts have required a showing of (1) a causal connection between the emotional distress and the violation of the discharge injunction as well as (2) egregious conduct from the creditor or significant emotional harm to the debtor. *See, e.g.*, *In re Nibbelink*, 403 B.R. 113, 120-21 (Bankr. M.D. Fla. 2009); *In re Feldmeier*, 335 B.R. 807, 813-15 (Bankr. D. Or. 2005); *In re Perviz*, 302 B.R. 357, 371 (Bankr. N.D. Ohio 2003). Having considered the entire record, the Court is unable to find evidence that Gray suffered any emotional distress, significant or otherwise, caused specifically by Nussbeck's inclusion of the discharged personal loan in the Agreement. Moreover, although Nussbeck's actions violated the discharge injunction, they were taken pursuant to assurances by Gray's attorney and cannot be considered egregious. Under these facts, the Court holds that Gray is not entitled to damages for emotional distress. It follows that although Nussbeck is liable for civil contempt under § 105, he is not subject to monetary sanctions.

2. **Odrowski**

Following Gray's breach of the Agreement, Odrowski sent Gray a collection letter and filed the Missouri case, both on Nussbeck's behalf. The record contains no evidence that Odrowski knew the discharge injunction was applicable to the personal-loan component of the Agreement when he performed these tasks. Because there is no evidence that Odrowski knew the discharge injunction applied, Odrowski cannot be subject to contempt sanctions. Put differently, although Odrowski's actions constitute a slight technical violation of § 524(a)(2), sanctions for civil contempt under § 105 are not indicated.

## IV. CONCLUSION

For all of the foregoing reasons, summary judgment will be entered (1) in favor of plaintiff Gray as to his complaint against defendant Nussbeck, with no damages awarded; and (2) in favor of the Odrowski Defendants as to Gray's complaint against them. The Court will enter a separate judgment pursuant to Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 58(a). All pending motions are hereby denied as moot.

IT IS SO ORDERED.

###